**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

UNITED STATES of AMERICA,

    Plaintiff,

v.                                                      Case No. 07-CV-13963

ONE MILLION SEVEN HUNDRED
THOUSAND DOLLARS ($1,700,000.00)
IN U.S. CURRENCY

    Defendant *in rem*.
_____/

**OPINION AND ORDER DENYING "CLAIMANTS ABRAHAM NUNU'S AND LINA MATTA'S MOTION FOR SUMMARY JUDGMENT AND RETURN OF PROPERTY AND/OR SUBSTITUTION OF COLLATERAL"**

Pending before this court is a motion for summary judgment and return of property and/or substitution of collateral filed by Claimants Abraham Nunu and Linda Matta on January 10, 2008. The matter has been fully briefed and the court concludes a hearing on the motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny the motion.

**I. BACKGROUND**

This is a forfeiture case concerning property seized in response to criminal charges pending against Nunu, a businessman who emigrated to the United States approximately 24 years ago. (Claimants' Mot. at 5.) Since Nunu's relocation to the United States, he has owned and operated seven gas stations, over twenty-one Subway franchise restaurants and entered into various property investments. (*Id.*) In 2003, a special agent with the United States Secret Service commenced an

investigation into Nunu's business affairs and financial transactions. (Aff. of Special Agent Todd Porinsky at ¶ 2, Gov't's Resp. Ex. A.) Search warrants, subpoenas, witness interviews, and additional forms of investigation produced thousands of pages of bank statements, title company documents, and other financial records. (*Id.*)

On February 26, 2007, police officers conducted a search of Nunu's property and found a Chase bank statement in the name of MNG, Inc. ("MNG"). (*Id.* at ¶ 3.) Shortly after the search, Nunu voluntarily met with federal agents on March 1, 2007, to discuss the investigation into his affairs. (*Id.* at ¶ 3.) Nunu informed federal agents that the MNG account contained proceeds from the sale of two gas stations, Master Petroleum and Master Petroleum V. (*Id.*) Nunu also informed federal agents that he had accounts with Comerica Bank that contained property sales, and that "he had moved the profits between the Comerica accounts for Master Petroleum, Master Petroleum III, Master Petroleum V and Nunu investments." (*Id.*) After reviewing the evidence, the special agent discovered that the sales of Nunu's Master Petroleum (Lindwood station) and Master Petroleum V (Allen Mini Mart) properties (together "gas station sales") involved fraudulent loans. (*Id.* at ¶ 4.) Claimants assert that the gas sation sales netted approximately only $198,390.72 ($110,999.63 from Allen Mini Mart and $87,391.09 from Linwood station). (Claimants' Mot. at 6.) Plaintiff the United States of America, on the other hand, states that Nunu actually received significantly more from the gas station sales than what he claims. (Gov't's Resp. at 6.)

On March 2, 2007, a magistrate judge of this court granted the government's request to freeze assets held in the name of MNG. (App. for Warrant at 1, Claimants' Mot. Ex. 2.) The assets frozen are as follows: Chase Business Classic

2

000000718792013, Chase Business High Yield Savings 0000002726062835, Certificate of Deposit 000100070990993, Certificate of Deposit 000100070991025 and Certificate of Deposit 000100070991691. (*Id.*) The funds frozen totaled approximately $1,700,000.00. (Porinsky Aff. at ¶ 5, Gov't's Resp. Ex. A.)

The $1,700,000.00 found in the MNG account was comprised of four deposits made in the amounts of $1,100,000.00, $197,500.00, $300,047.00 and $108,000. (*Id.* at ¶ 5.) The $1,100,000.000 deposit came from an account in the name of Nunu's father-in-law, and the $197,500.00 deposit originated from a $200,000.00 commercial loan Nunu obtained from Comerica Bank. (Claimants' Mot. at 8; Gov't's Resp. at 6.)

MNG is wholly owned by Matta, Nunu's sister. (Claimants' Mot. at 2 n.1.) Nunu is a signer on the MNG account. (Claimants' Mot. at 9.) According to Claimants, MNG was established in July of 2006 in order to allow Claimants and certain family members to obtain approval for a Dunkin Donuts franchise. (*Id.* at 8.) Dunkin Brands, Inc. ("Dunkin Brands") previously denied Nunu's franchise application because he had a misdemeanor conviction in 2006. (*Id.*) After removing Nunu's name from the transaction and applying for the franchise in MNG's name, Dunkin Brands approved the request. (*Id.*) Claimants assert that the MNG account was assembled and maintained for a legitimate business purpose. (*Id.* at 9.) Claimants further assert that the MNG account only contained pooled assets of Claimants' family members, which were wholly separate from Nunu's other business ventures. (*Id.* at 8-9.) Matta does not state that she personally contributed any money into the MNG account, but merely claims that the "funds were obtained from various relatives ...." (Claimants' Mot. at 9.) Therefore, there

3

is a issue of fact whether Matta has a financial interests in the MNG account and whether she has standing to contest the forfeiture.

On November 27, 2007, Nunu was indicted with criminal charges relating to the sale of Allen Mini Mart, *United States v. Bazi,* 07-cr-20585. (Gov't's Resp. at 3.) On September 19, 2007, the government filed a civil forfeiture action, *United States v. $1,700,000.00 in United States Currency*, 07-13963. (Gov't's Compl.) The government sought forfeiture of the MNG funds upon the grounds that they "constitute or [are] derived from" proceeds of Nunu's illegal activity. (*Id.* at 2.) Claimants argue that the forfeiture action is improper and that the seized property should be returned. (Claimants' Mot. at 1.)

Claimants in their motion for summary judgment argue that no genuine issue of material fact exists. (*Id.* at 4.) Claimants assert that the money seized by the government bears no relationship to Nunu's suspected illegal activity, and that it is impossible to trace the MNG funds. (*Id.*) Next, Claimants allege that the government failed to plead with specificity the allegation that Nunu "structured" deposits to avoid the $10,000.00 reporting requirement imposed on banks. (*Id.*) Lastly, Claimants request that property be returned or that the court allow a substitution of collateral in exchange for releasing the *in rem* funds. (*Id.* at 14.) The government responds that summary judgment is inappropriate because Nunu's volunteered statements to the federal agent provide the government with a reasonable belief that forfeiture is proper, and, in turn, raise a genuine issue of material fact as to whether the MNG funds were proceeds of illegal activity. (Gov't's Mot. at 6.)

## II. STANDARD

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate

when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the government is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original)(citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### B. Forfeiture

In a forfeiture action, the government must establish that "by a preponderance of the evidence[ ] that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). If the government alleges that the seized property was involved in or used to facilitate a criminal offense, the government has the burden of proving that "there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). The burden of proving a *substantial* connection, however, does not require the government to prove a *direct* connection between the illegal activity and the seized assets. *United States v. 21,000.00 In United States Postal Money Orders*, 298 F. Supp. 2d 597 (E.D. Mich. 2003) (emphasis added).

## III. DISCUSSION

Claimants' motion has three components. First, Claimants request summary judgment for lack of evidence. Second, Claimants request summary judgment on the grounds that the government failed to plead its complaint with specificity. Lastly, Claimants request the return of their property or substitution of collateral on the grounds of hardship.

### A. Lack of Evidence

Claimants assert that the government cannot meet its burden of proof because the MNG funds cannot be traced to illegal activity. (Claimants' Mot. at 10.) Claimants argue that it is impossible for the government to find evidence that the money was involved in criminal activity because the $1,100,000.00 deposit originated from Nunu's father-in-law, and the $197,500.00 deposit originated from a Comerica Bank loan. (*Id.* at 8-9.) Finally, Claimants argue that the government's forfeiture action is improper because the gas station sales netted approximately only $198,390.72, which is far less than the total $1,700,000.00 seized. (*Id.* at 10.)

The government, on the other hand, asserts that it has presented evidence demonstrating that it has a reasonable belief that the MNG funds were involved in illegal activity. (Gov't's Resp. at 5.) Nunu voluntarily informed federal officers that he deposited proceeds from the gas station sales into the MNG *and* Comerica accounts, thereby tainting the Comerica Bank account as well. (*Id.*) The government asserts that the $200,000.00 Comerica Bank loan was used as a means to hide Nunu's otherwise illegitimate funds, which were ultimately deposited into the MNG account. (Gov't's Resp.

7

at 6; Gov't's Exhibit A at ¶ 7.) The government further argues that the Affidavit of Special Agent Todd Porinsky establishes that:

> Nunu received far larger sums from the gas station sales than claimants' contend; the funds were deposited and moved through multiple accounts held by multiple entities controlled by Nunu and did end up in the MNG, Inc. account; significant proceeds exceeding $1.0 million that supposedly came from Nunu's father-in-law were in fact Nunu's own money ....

(Gov't's Resp. at 6.) If proven, such allegations would establish a real connection between the MNG funds and illegal activity.

Given the above evidence presented by the government, it appears that Claimants seek summary judgment on the grounds that the government has not provided *direct* evidence tracing the MNG funds to illegal activity. Such, however, is not required. *United States v. 21,000.00 In United States Postal Money Orders*, 298 F. Supp. 2d 597, 602 (government not required to "demonstrate a substantial connection between [ ] property [seized] and a specific drug transaction" in question). The government need merely present evidence that would show a substantial connection, and the government has satisfied this initial burden. Nunu's admissions coupled with Porinsky's affidavit provide the government with reasonable grounds to believe that a substantial connection exists between the MNG funds and Nunu's illegal activity.

Although Claimants offer an explanation and assert that the MNG funds came from legitimate sources, this alone does not support a motion for summary judgment. *United States v. 21,000.00 In United States Postal Money Orders,* 298 F. Supp. 2d 597, 604-605 (genuine issue of material fact existed even where claimant offered evidence showing plausible explanation that property came from legitimate source). Viewing the

evidence in a light most favorable to the non-moving party, this court finds that a genuine issue of material fact exists as to whether the MNG funds constitute, or are derived from, illegal activity.

Furthermore, the court rejects Claimants' contention that the seized amount is improper because the net amount obtained from the gas station sales was approximately only $198,390.72 and far in excess of the $1,700,000.00 seized. First, Claimant misinterprets the government's basis for its forfeiture action. The government does not rely solely upon the proceeds obtained from Claimants' fraudulent sales. Instead, the government states that its right to forfeiture is also based upon the involvement of the money seized in money laundering. "[T]he government is confident that it can prove ... that the seized proceeds are traceable to the fraudulent gas station sales, either as proceeds per se *or* as involved in money laundering." (Gov't's Resp. at 5) (emphasis added). The affidavit and Nunu's volunteered statements support this conclusion.

Second, even if the gas station sales are the only proceeds connected to illegal activity, Claimants' motion for summary judgment is nevertheless improper. If the MNG accounts include both proceeds from the gas station sales and legitimate investment funds, commingling of the two renders the entire account proceeds of illegal activity. "When money from illegal sources is co-mingled with money from unspecified other sources, all such funds are attributable to the money laundering scheme." *United States v. Jamieson*, 427 F.3d 394, 404 (6th Cir. 2005) (quoting *United States v. Owens*, 159 F.3d 221, 229 (6th Cir. 1998) (quotations omitted). *See also United States v. Bencs*, 28 F.3d 555 (6th Cir. 1994). Claimants' argument that the government cannot provide any evidence in support of its position because the funds cannot be traced falls short. The

9

government must only show that it has a reasonable belief that the MNG account include funds from illegal activities, and based upon Nunu's volunteered statements and the affidavit, the government has met that burden.

The Sixth Circuit's reasoning in *United States v. Bencs*, 28 F.3d 555 supports this conclusion. The Court stated: "we cannot believe that Congress intended that participants in unlawful activities could prevent their own convictions under the money laundering statute simply by commingling funds derived from both 'specified unlawful activities' and other activities." *Id.* at 562. Likewise, if Nunu is found to have engaged in illegal activity, this court cannot allow him to escape liability by commingling his assets in an attempt to raise the defense that the funds are untraceable.

For these reasons, this court finds that a genuine issue of material fact exists (1) as to whether the MNG funds are proceeds or derived from illegal activity, and (2) as to whether a portion or the total amount of the MNG funds constitute or are derived proceeds from illegal activity.

## B. Forfeiture Pleading Requirements

Next, Claimants allege that summary judgment is appropriate because the government failed to plead its structuring claim with specificity. The government responds that summary judgment is improper because there remains a factual dispute as to whether the deposits in question were structured. Claimants cite *United States v. One*, 50 F. Supp. 2d 789 (N.D. Ill. 1999) as the benchmark for pleading forfeiture claims. (Claimants' Mot. at 5.) Accepting for the moment Claimants' proposition that a District Court decision from another circuit can supply such a "benchmark," the court in *United*

*States v. One* stated simply that "[t]he government must go beyond the simple notice pleading required in ordinary civil cases ... and state with specificity the factual basis of its claim." *Id.* at 796. The specificity requirement at issue in *United States v. One* is based upon Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims. Rule E(2)(a) ("Rule E(2)(a)") provides that an action in rem "shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed.R.Civ.P. Supplemental Rule E(2)(a).

A motion for summary judgment based upon the pleadings alone is functionally equivalent to a motion to dismiss. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2713 (3d ed. 1998); *see also North Arkansas Medical Center v. Barrett*, 962 F.2d 780,784 (8th Cir. 1992) and *McBride v. City of Detroit*, No. 07-12794, 2007 WL 420113, at *2 (E.D. Mich. Nov. 28, 2007). Despite the heightened pleading burden allocated to a plaintiff in a forfeiture action, when evaluating a motion to dismiss this court must "accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

The structuring allegation at issue in the government's complaint alleges that Nunu deposited a total of $329,617.00 to an account in the name of Master Petroleum III, Inc. (Gov't's Compl. at 6.) The government's complaint further states that investigations reveal that Nunu structured these deposits to avoid the Currency Transaction Reports for deposits that exceed $10,000.00. (*Id.*) Pursuant to 32 U.S.C. §

11

5324(a)(3), it is unlawful for a person, "for the purpose of avoiding reporting requirements ... [to] structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." The elements of a structuring offense entail:

> (1) the defendant must, in fact, have engaged in acts of structuring; (2) he must have done so with knowledge that the financial institutions were legally obligated to report currency transactions in excess of $10,000; and (3) he must have acted with the intent to evade this reporting requirement.

*United States v. MacPherson*, 424 F.3d 183, 188 (2d Cir. 2005).

Claimants contend that the government's "structuring" allegation is not plead with specificity only because the manner in which the gas station sale deposits were made is commonplace in the gas station industry. Claimants' challenge to the complaint is, in actuality, that the government cannot prove the structuring allegation. Such an argument is fruitless and far beyond the scope of a motion to dismiss because discovery would be required to affirm or invalidate the government's allegation. *See e.g. Buntea v. State Farm Mutual Auto Ins. Co,* 467 F. Supp. 2d 740, 749 (E.D. Mich. 2006) (motion to dismiss denied because Defendant's argument that the government could not prove expenses were the result of an injury required an investigation); *see also McBride v. City of Detroit*, No. 07-12794, 2007 WL 420113, at *3. In addition, Claimants also state that the government failed to state the factual basis of the structuring claim. To comport with Rule E(2)(a), a complaint is required to offer only sufficient facts such as to allow a claimant to begin an investigation or draft a responsive pleading. The factual basis offered by the government consisted of the following: (1) a total of $320,627.00 was deposited into the Master Petroleum III, Inc. account, (2) Nunu was a signer on the

account, and (3) the deposits were arranged in amounts that did not activate the $10,000.00 reporting requirements. Claimants have cited no authority establishing –or even hinting– that the government's complaint is deficient in this respect. In fact, Claimants' instant challenge to the complaint defeats itself; by advancing the grounds that the deposits made supposedly conform to ordinary business practices in the gas station industry, Claimants reveal that the government's complaint provided a fully adequate factual basis that allowed them to commence an investigation or draft a responsive pleading.

Claimants have not met their burden of proof. The government has not failed to plead with specificity.

### C. Return of Property

Lastly, Claimants request that the seized property be returned to them or that the court allow a substitution of collateral because withholding the MNG funds imposes a substantial hardship. Claimants cite Rule 41(g) of the Federal Rules of Criminal Procedure as authority ("Rule 41(g)"). Rule 41(g) provides:

> Motion for Return of Property. A person aggrieved by an unlawful search and seizure of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed.R.Crim.P. 41(g). For the reasons below, this court declines to exercise jurisdiction.

First, Rule 41(g) is "*not applicable* ... to *civil forfeiture* of property for violation of a statute of the United States." Fed.R.Crim.P. 54(b)(5) (emphasis added). Claimants are correct in stating that Courts have found authority to hear Rule 41(g) motions for return

13

of property in civil forfeiture cases under equitable or "anomalous" jurisdiction. *Matter of Ninety-One Thousand Dollars in United States Currency*, 715 F. Supp. 423, 427 (D. R.I. 1989). However, courts typically only hear Rule 41(g) motions in civil forfeiture cases when the claimant has yet to be indicted or has not been subject to any type of criminal proceedings at all. *Id.* Nunu, however, has been indicted and faces criminal charges in the related criminal proceeding pending before this court.

Second, although the MNG account is only in the name of Matta, there is at least a material issue of fact as to whether Matta is an innocent owner as defined in 18 U.S.C. § 983(d). Because the MNG account was not in existence at the time of Nunu's alleged illegal activity, to qualify as an innocent owner, Matta must (1) be a bona fide purchaser or seller for value and (2) not have known, nor reasonably could have known, that the property was subject to forfeiture. 18 U.S.C. § 983(d)(3)(A). The government has established a reasonable belief that the MNG funds in fact are solely those of Nunu and that Matta does not have a real financial interest in the MNG account. Accordingly, the government has established a genuine issue of material fact as to whether Claimant Mata is an innocent owner with a property interest in the MNG funds.

Third, the Sixth Circuit has affirmatively stated that once a party receives notice of forfeiture proceedings, Rule 41(g) is no longer an accessible remedy. "After the government initiates forfeiture proceedings and notifies a claimant of the proceedings, a claimant may no longer use Rule 41[g], but instead must submit to the statutory procedures governing civil forfeiture proceedings." *United States v. One 1974 Learjet 24D, Serial Number 24D-290, Mexican*, 191 F.3d 668, 673 (6th Cir. 1999). Claimants' opportunity to raise a Rule 41(g) claim has expired.

14

Finally, Claimants have not provide this court with any authority justifying their proposed substitution of collateral. Claimants simply allege that forfeiture is a "hardship." Forfeiture or even freezing of significant financial assets, of course, would present a hardship for almost all claimants, so this argument has little substance. The government has demonstrated a reasonable belief that the funds are primarily, if not wholly, those of Nunu and connected to illegal activity. To ensure the preservation of the MNG funds until the resolution of the government's civil forfeiture action, this court finds it appropriate to deny Claimants' request for return of property or substitution of collateral.

## IV. CONCLUSION

IT IS ORDERED that Claimants' "Motion for Summary Judgment and Request for Return of Property and/or Substitution of Collateral" [Dkt. # 15] is DENIED.

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: February 28, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 28, 2008, by electronic and/or ordinary mail.

        S/Lisa Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522